UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNIE PERRONE,

                              Plaintiff,

                v.

CATAMOUNT SKI RESORT, LLC and
CATAMOUNT DEVELOPMENT
CORPORATION,

                              Defendants.

No. 19-CV-8054 (KMK)

OPINION & ORDER

Appearances:

Uriel E. Gribetz, Esq.
Law Office of Uriel E. Gribetz
White Plains, NY
*Counsel for Plaintiff*

Matthew J. Kelly, Esq.
Roemer, Wallens Law Firm
Albany, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Annie Perrone ("Plaintiff") brings this Action against Defendants Catamount Ski Resort, LLC ("Catamount Ski Resort") and Catamount Development Corporation ("Catamount Development"; with Catamount Ski Resort, "Defendants"), alleging negligence and gross negligence in connection with injuries Plaintiff suffered while skiing at Catamount Ski Resort. (*See generally* Compl. (Dkt. No. 1).)  Before the Court is Defendants' Motion To Transfer Venue to the Northern District of New York (the "Northern District"), pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) (the "Motion").  (Defs.' Not. of Mot. To Transfer Venue ("Not. of Mot.") (Dkt. No. 15).)  For the following reasons, Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true in resolving the instant Motion.  (*See generally* Compl.)  Plaintiff resides in Connecticut.  (*Id.* ¶ 2.) Catamount Development designed, owns, and controls Catamount Ski Resort, which is a "ski recreational facility" with its principal place of business in Hillsdale, New York.  (*Id.* ¶¶ 3, 20–22.)  Defendants' corporate offices are also located in Hillsdale, New York.  (*Id.* ¶ 4.)  According to Plaintiff, Catamount Ski Resort is a domestic corporation and a foreign limited liability corporation.  (*Id.* ¶¶ 12–13.)[1]  Both Catamount Development and Catamount Ski Resort were "duly organized and exist[] under and by virtue of the laws of the State of New York."  (*Id.* ¶¶ 12, 14.)

On March 3, 2019, while skiing at Catamount Ski Resort, Plaintiff collided with "an unmarked, unguarded[,] and unpadded pole from a snow making machine" on a ski trail.  (*Id.* ¶ 8.)  As a result of the collision, Plaintiff suffered "multiple pelvic fractures, right sacral alar/acetabular/ischium fracture, right inferior pubic rami fracture, [and] left pubic bone fracture."  (*Id.* ¶ 9.)  According to Plaintiff, her injuries required medical treatment and were "severe, serious, permanent[,] and disabling," the long term effects of which "continue to manifest themselves."  (*Id.* ¶¶ 10, 33.)  Plaintiff has endured "conscious pain and suffering and loss of enjoyment of life," and has paid "medical, hospital[] and other health[care] related expenses," which she expects to continue to incur, as well as lost time from school.  (*Id.* ¶¶ 10,

---

[1] Defendants clarify that Catamount Ski Resort is located on the border of Hillsdale, New York and South Egremont, Massachusetts.  (Aff. of Matthew J. Kelly, Esq. in Supp. of Mot. ("Kelly Aff.") ¶ 7 (Dkt. No. 15-1).)  Defendants also represent that Catamount Ski Resort is a "Massachusetts limited liability company," and a "registered foreign limited liability company in Columbia County, New York."  (*Id.* ¶ 5.)  Catamount Development is a New York corporation. (*Id.* ¶ 6.)

43.)  Plaintiff alleges that, among other issues, Defendants failed to provide "a marked, guarded[,] and padded pole . . . on the ski trail."  (*Id.* ¶¶ 30, 32.)  Plaintiff seeks actual damages in excess of $1,000,000; punitive damages; pre- and post-judgment costs and interest; and attorney's fees.  (*Id.* ¶¶ 47A–D.)

### B.  Procedural Background

Plaintiff filed her Complaint on August 28, 2019.  (*See generally* Compl.)  On September 16, 2019, Defendants requested leave to file the instant Motion, (Dkt. No. 6), and filed their Answer on September 23, 2019, (Dkt. No. 9).  After a Pre-Motion Conference on October 23, 2019, (Dkt. (minute entry for Oct. 23, 2019)), the Court set a briefing schedule, (Dkt. No. 14). Pursuant to the schedule set by the Court, Defendants filed their Motion on October 31, 2019. (Not. of Mot.; Kelly Aff.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 15-12).)  Plaintiff filed an Opposition on November 21, 2019, (Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 17); Aff. of Uriel E. Gribetz, Esq. in Opp'n to Mot. ("Gribetz Aff.") (Dkt. No. 16)), and Defendants filed a Reply on December 4, 2019, (Defs.' Reply Mem. of Law in Further Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 18-4); Reply Aff. of Matthew J. Kelly, Esq. in Further Supp. of Mot. ("Kelly Reply Aff.") (Dkt. No. 18)).

## II.  Discussion

### A.  Legal Standards

The permissible venue in this Action is determined by 28 U.S.C. § 1391(b).  Under this provision, venue can be proper "in either (1) the district of the defendant's residence; (2) the district where a substantial part of the events giving rise to the claim occurred; or (3) if neither of those can be applied, any district where a defendant is subject to personal jurisdiction."  *Ne. Landscape & Masonry Assocs., Inc. v. State of Conn. Dep't of Labor*, No. 14-CV-9104, 2015

3

WL 8492755, at *2 (S.D.N.Y. Dec. 10, 2015) (citation and quotation marks omitted).  Section 1391(b) is to be construed strictly "to protect a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." *Caitlin Indem. Co. v. New England Law/Bos.*, No. 15-CV-4836, 2016 WL 447849, at *2 (S.D.N.Y. Feb. 4, 2016) (citation, alteration, and quotation marks omitted).  Where venue is improper, a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Fedele v. Harris*, 18 F. Supp. 3d 309, 319 (E.D.N.Y. 2014) (quotation marks omitted) (quoting 28 U.S.C. § 1406(a)); *see also Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) (noting that a court must decide whether to "simply affirm dismissal on these [improper venue] grounds or, in the interest of justice, order transfer of the action to another district where jurisdiction and venue properly obtain" (citation omitted)).  "Under 28 U.S.C. § 1391, once venue has been challenged, the plaintiff . . . has the burden of establishing that the chosen venue is proper." *Alessandra v. Colvin*, No. 12-CV-397, 2013 WL 4046295, at *2 (W.D.N.Y. Aug. 8, 2013) (citation omitted).

Even if venue is proper, a court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  In determining whether to transfer, courts should first inquire "whether the action could have been brought in the proposed transferee forum." *Solar v. Annetts*, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010) (citation and quotation marks omitted).  Second, courts should determine "whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Id.* (citation and quotation marks omitted).  With regard to

4

the second prong, courts weigh the following factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (citation and quotation marks omitted).  On a motion to transfer venue pursuant to § 1404(a), the "burden rests on the moving party to make a clear and convincing showing that the balance of these factors favors their choice of forum." *Lapa v. Massage Envy Franchising, LLC*, No. 18-CV-7403, 2019 WL 2004072, at *2 (S.D.N.Y. May 7, 2019) (citation and quotation marks omitted).  Generally, the plaintiff's choice of forum "weighs heavily against transfer." *Marshall v. Annucci*, No. 16-CV-8622, 2018 WL 1449522, at *11 (S.D.N.Y. Mar. 22, 2018); *see also Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004) ("[A] plaintiff's choice of forum is presumptively entitled to substantial deference." (citation omitted)).

B.  Analysis

1.  Whether Venue is Proper in the Southern District of New York

Defendants argue that venue does not lie in the Southern District of New York (the "Southern District") because Defendants do not reside in the Southern District, do not have sufficient contacts with the Southern District, and the accident in question did not occur in the Southern District.  (Defs.' Mem. 3–7.)  Instead, Defendants argue that the Court should transfer the case to the Northern District of New York (the "Northern District").  (*Id.* at 5–7.)  According to Plaintiff, venue is proper in the Southern District because Defendants have had sufficient contacts with this District, including litigating cases in New York State courts, Catamount Ski

Resort is located "in close proximity" to the Southern District, and many visitors to Catamount Ski Resort reside in the Southern District.  (Pl.'s Mem. 2–5.)

### a.  Venue under 28 U.S.C. § 1391(b)(1)

An action may be brought in, inter alia, "a judicial district in which any defendant resides, if all defendants are residents of the [s]tate in which the district is located."  28 U.S.C. § 1391(b)(1).  A corporate defendant in a state with multiple judicial districts "shall be deemed to reside in any district in that [s]tate within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate [s]tate, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts."  28 U.S.C. § 1391(d).  Similarly, "entit[ies] with the capacity to sue and be sued . . . whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c)(2).

Personal jurisdiction is determined by "a two-step inquiry."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citations omitted).  "First, [the court] look[s] to the law of the forum state to determine whether personal jurisdiction will lie."  *Id.* (citation omitted).  If such a basis for jurisdiction exists, the court must then determine whether the exercise of jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment.  *See id.*

"Personal jurisdiction in New York is established either under CPLR § 301, which allows for 'general' jurisdiction predicated on a continuous or systematic course of doing business, or CPLR § 302, which allows for specific jurisdiction over non-domiciliaries . . . ."  *Bank of Am., N.A. v. Wilmington Tr. FSB*, 943 F. Supp. 2d 417, 421–22 (S.D.N.Y. 2013) (citations omitted).

6

"[S]pecific jurisdiction may be exercised over non-domiciliaries who engage in any of four types of acts: (1) business transactions within New York or contracts to supply goods within the state; (2) torts committed within New York; (3) torts committed outside New York which cause injury within the state, so long as the tortfeasor regularly does business within New York or should reasonably expect that the tortious conduct will cause consequences within the New York; and (4) ownership or possession of real property within New York." *Langenberg v. Sofair*, No. 03-CV-8339, 2006 WL 2628348, at *2 (S.D.N.Y. Sept. 11, 2006) (citations omitted). "Essential to the maintenance of a suit against a nondomiciliary under CPLR [§] 302(a)(1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon." *Associated Aviation Underwriters v. DAP Holding, N.V.*, No. 02-CV-7446, 2003 WL 21277148, at *3 (S.D.N.Y. May 30, 2003) (citation, footnote, and quotation marks omitted). Additionally, "[w]here no discovery has been conducted and no evidentiary hearing has been held, a plaintiff facing such a motion need only allege facts constituting a prima facie showing of personal jurisdiction." *MacCallum v. N.Y. Yankees P'ship*, 392 F. Supp. 2d 259, 264 (D. Conn. 2005) (quotation marks omitted) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)).

With respect to 28 U.S.C. § 1391(b)(1), Plaintiff has not established that venue lies in the Southern District because Defendants' alleged contacts with the Southern District would be insufficient to subject them to personal jurisdiction. First, Defendants do not reside in the Southern District, which Plaintiff does not dispute. (*See* Pl.'s Mem. 3 ("[D]efendants are a ski resort in *close proximity* to the Southern District . . . ." (emphasis added)).) Instead, Catamount Ski Resort is located on the border of Hillsdale, New York, which is in the Northern District, and South Egremont, Massachusetts, which is in the District of Massachusetts. (Kelly Aff. ¶¶ 5, 7.)

Catamount Development's principal executive office is also located in Hillsdale New York, and neither Defendant has places of business in the Southern District. (*Id.* ¶¶ 6, 13.) Thus, "[D]efendant[s] 'reside[]' in the Northern District for purposes of venue." *Holmes v. Romeo Enters., LLC*, No. 15-CV-3915, 2015 WL 10848308, at *2 (S.D.N.Y. Nov. 2, 2015) (finding that because the defendant's car dealership was located in the Northern District, the Northern District "ha[d] personal jurisdiction over [the] defendant with respect to th[e] action"); *see also Farion v. Ezzo*, No. 19-CV-8894, 2019 WL 4933465, at *1–2 (S.D.N.Y. Oct. 7, 2019) (finding that venue was improper under 28 U.S.C. § 1391(b)(1) when the plaintiff did not allege that the defendants were domiciled in the Southern District and instead had alleged that the defendants resided in New Jersey); *Nelson v. Wells Fargo Bank, N.A.*, No. 17-CV-4045, 2019 WL 2514229, at *8 (S.D.N.Y. June 18, 2019) (concluding that the plaintiff failed to allege that the defendants were residents of the Southern District, because the defendants did not have a principal places of business or offices in the Southern District).

Further, Plaintiff has not alleged sufficient facts to establish that Defendants are "engaged in such a continuous and systematic course of doing business [in the Southern District] as to warrant a finding of [their] presence in this jurisdiction." *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 592 (S.D.N.Y. 2011) (citation and quotation marks omitted). Instead, Plaintiff merely asserts that "many of [Defendants'] patrons are from within the confines of the Southern District," and that Plaintiff "[c]learly . . . would be able to prove and substantiate with evidence at a hearing, should the [C]ourt so order, that the majority of visitors to Catamount [Ski Resort] do indeed reside in the Southern District." (Pl.'s Mem. 3–4.) These statements do not establish that Defendants actively "solicit[] substantial amounts of business from [the Southern District] on a continuous basis," such that there would be a basis for general

8

jurisdiction.  *Biro v. Nast*, No. 11-CV-4442, 2012 WL 3262770, at \*6 (S.D.N.Y. Aug. 10, 2012);
*see also Nelson*, 2019 WL 2514229, at \*8 (finding, in the context of a motion to dismiss for
improper venue, that the plaintiff's allegation that the defendants "conduct[ed] business in th[e]
[Southern] District" was insufficient to establish that the defendants "*regularly* d[id] or
solicit[ed] business" in the Southern District (emphasis in original) (citations, record citation, and
quotation marks omitted)); *cf. MacCallum*, 392 F. Supp. 2d at 264–65 (finding that the plaintiff
alleged sufficient jurisdictional facts when he claimed, for example, that the defendant solicited
ticket sales and advertised in media outlets in Connecticut, which the defendant did not
specifically dispute).

Similarly unavailing is Plaintiff's argument that venue is proper in the Southern District
because Defendants have litigated prior cases in state courts located in Westchester, Nassau, and
New York Counties.  (Pl.'s Mem. 2–4; Gribetz Aff. ¶ 9.)  "[A] party's consent to jurisdiction in
one case extends to that case alone and in no way opens that party up to other lawsuits in the
same jurisdiction in which consent was given."  *Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68, 88 (2d Cir. 2018) (citation, alteration, and quotation marks omitted).  Further, as
noted by Defendants, the analysis of venue under New York's Civil Practice Law and Rules
differs at least in part from that under 28 U.S.C. § 1391, and, as represented by Defendants, the
"basis for venue in each of th[e] [previously litigated] cases was the residence of the plaintiff(s),"
which is not a relevant consideration under 28 U.S.C. § 1391(b)(1).  (*See* Kelly Reply Aff. ¶¶ 4–
5; Defs.' Reply Mem. 4.)  Thus, these cases are inapposite, and do not warrant a finding that
venue is proper in this District.[2]

---

[2] Plaintiff argues that in *Lehrman v. Catamount Development Corporation*, No.
611330/17 (N.Y. Sup. Ct.), the court found that the defendant, Catamount Development, had a
"substantial presence" in New York.  (Pl.'s Mem. 3.)  However, *Lehrman* is not analogous to the

Plaintiff also fails to establish that specific jurisdiction would exist in the Southern

District, because Plaintiff has not alleged that her "cause of action arises from . . . a business

transaction [in this District]," *Biro*, 2012 WL 3262770, at \*9 (citing *Best Van Lines, Inc. v.

Walker*, 490 F.3d 239, 246 (2d Cir. 2007)), nor that the alleged tort occurred here.  *See also

Associated Aviation Underwriters*, 2003 WL 21277148, at \*3 ("Essential to the maintenance of a

suit against a nondomiciliary under CPLR [§] 302(a)(1) is the existence of some articulable

nexus between the business transacted and the cause of action sued upon." (citation, footnote,

and quotation marks omitted)).  Even if Plaintiff did argue that the purchase of her lift ticket was

a business transaction from which her injury arose, which she does not, Plaintiff does not allege

that she purchased her ticket in the Southern District, and appears to have been skiing under a

group pass with other members of a church located in Danbury, Connecticut.  (Kelly Reply Aff.

¶ 12 (citing Kelly Aff. Ex. D ("Incident Report"), at 1 (Dkt. No. 15-5)).)  Similarly, although

Plaintiff alleges that Defendants committed a tort, that tort, and Plaintiff's resulting injury,

occurred at Catamount Ski Resort, which, as noted, is located on the border of the Northern

District and the District of Massachusetts.  (Compl. ¶¶ 7–9; Kelly Aff. ¶ 7.)  Thus, venue would

be proper in either of those locations.  *See 3H Enters., Inc. v. Dwyre*, 182 F. Supp. 2d 249, 258

(N.D.N.Y. 2001) (noting that venue was proper in Texas because, inter alia, "all of the actions

---

instant Action.  First, the posture of the case was distinguishable, as venue "was properly
designated in Nassau County, where the [p]laintiff reside[d]."  (Gribetz Aff. Ex. C ("June 26,
2018 *Lehrman* Order"), at 3 (Dkt. No. 16-3).)  As such, Catamount Development brought a
motion based on forum non conveniens, arguing that Massachusetts was a more convenient
forum.  (*Id.* at 1, 4.)  As the court noted, "[t]he doctrine of forum non conveniens [under New
York State law] permits a court to stay or dismiss [an] action[] where it is determined that the
action, *although jurisdictionally sound*, would be better adjudicated elsewhere."  (*Id.* at 7
(emphasis added) (citation omitted).)  Second, in *Lehrman*, the court found that there were
sufficient contacts in New York State as a whole, not in any specific jurisdiction within the state.
(*See id.* at 8 ("[T]here is no question that the [d]efendant has substantial connections to New
York.").)  Thus, the court's findings in *Lehrman* are not applicable to this Motion.

which form[ed] the basis for th[e] alleged tort took place in Texas").  Nor does Plaintiff claim

that Defendants "own[] or possess[] . . . real property" within this District.  *Langenberg*, 2006

WL 2628348, at *2 (citation omitted).  Accordingly, Plaintiff has not established that Defendants

"reside" in the Southern District, and venue in this District is therefore improper under 28 U.S.C.

§ 1391(b)(1).  Conversely, venue does lie in the Northern District, as the "judicial district in

which . . . [D]efendant[s] reside."  28 U.S.C. § 1391(b)(1).

<u>b.  Venue under 28 U.S.C. § 1391(b)(2)</u>

With respect to 28 U.S.C. § 1391(b)(2), a district court must engage in a two-step

inquiry: first, "identify the nature of the claims and the alleged acts or omissions giving rise to

the claims," and second, "determine whether a substantial part of the acts or omissions occurred

in the district where the suit was filed."  *Fedele*, 18 F. Supp. 3d at 316 (citing *Daniel*, 428 F.3d at

432).  For venue to be proper under § 1391(b)(2), "*significant* events or omissions *material* to the

plaintiff's claim must have occurred in the district in question, even if other material events

occurred elsewhere."  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphases

in original); *see also Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir.

1994) (noting that the "current statutory language still favors the defendant in a venue dispute by

requiring that the events or omissions supporting a claim be 'substantial'").

"'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry,

determined by assessing the overall nature of the plaintiff's claims and the nature of the specific

events or omissions in the forum, and not simply by adding up the number of contacts."  *Daniel*,

428 F.3d at 432–33 (citations omitted).  As courts are to construe the venue statute strictly, "[i]t

would be error . . . to treat the venue statute's 'substantial part' test as mirroring the minimum

contacts test employed in personal jurisdiction inquiries."  *Gulf Ins.*, 417 F.3d at 357 (citations

11

omitted).  Thus, "[o]nly the events that directly give rise to a claim are relevant."  *Fedele*, 18 F.

Supp. 3d at 317 (quotation marks omitted) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366,

1371 (11th Cir. 2003)).  Certainly, "venue can be proper in more than one district; that is, venue

is not restricted to the district with the 'most substantial' connection to the events or omissions

related to a claim."  *Prospect Capital Corp. v. Bender*, No. 09-CV-826, 2009 WL 4907121, at *3

(S.D.N.Y. Dec. 21, 2009) (citation omitted).  However, "the 'substantial events or omissions'

test limits the number of proper venues 'to protect the *defendant* against the risk that a plaintiff

will select an unfair or inconvenient place of trial.'"  *Id.* (emphasis in original) (quoting *Daniel*,

429 F.3d at 432).

Here, Plaintiff claims that she collided with an "unmarked, unguarded[,] and unpadded

pole from a snow making machine" that was on a ski trail at Catamount Ski Resort, and that she

suffered "multiple pelvic fractures, right sacral alar/acetabular/ischium fracture, right inferior

pubic rami fracture, [and] left pubic bone fracture" as a result.  (Compl. ¶¶ 8–9.)  Plaintiff alleges

that Defendants were negligent and grossly negligent by "failing to mark, guard[,] and/or provide

adequate padding to poles along the ski trail," despite their awareness of previous injuries caused

by these poles.  (*Id.* ¶¶ 11–46.)  Thus, the significant event giving rise to Plaintiff's claims—

Plaintiff's accident—and the alleged acts that led to that event—Defendants' failure to

adequately protect against the accident—occurred at Catamount Ski Resort, located on the

border of the Northern District and the District of Massachusetts.  As such, the Southern District

is an improper venue under 28 U.S.C. § 1391(b)(2).  *See Luctama v. Knickerbocker*, No. 19-CV-

8717, 2020 WL 1503563, at *4–5 (S.D.N.Y. Mar. 30, 2020) (finding that because the car

accident that gave rise to the plaintiffs' claims occurred in Connecticut, the District of

Connecticut, and not the Southern District, was the proper venue under § 1391(b)(2)); *Conerly v.*

*Collins State Veterans Home*, No. 16-CV-971, 2016 WL 10571899, at *2 (W.D.N.Y. Dec. 12, 2016) (finding that venue in the Western District of New York was improper when the plaintiff sustained a back injury while working for the defendant in Mississippi); *Harris v. Ware*, No. 04-CV-1120, 2005 WL 503935, at *3 (E.D.N.Y. Mar. 4, 2005) (finding that venue was improper in New York when a car accident occurred in Delaware).

Plaintiff argues that venue in the Southern District is proper because, inter alia, Plaintiff's current physician is located in New York City, and Plaintiff had MRIs taken in New York City after the accident. (Gribetz Aff. ¶¶ 4–5.) However, "by referring to 'events or omissions giving rise to the claim' [in 28 U.S.C. § 1391(b)(2)], Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff." *Ne. Landscape*, 2015 WL 8492755, at *4 (citation and some quotation marks omitted); *see also Slobig v. Gannuscia*, No. 16-CV-3783, 2018 WL 1305459, at *3 (S.D.N.Y. Mar. 9, 2018) (explaining that "the acts of [the] [d]efendants, not the activities of or harm to [the] [p]laintiff, determine where venue properly lies" (citation and quotation marks omitted)). Thus, the location of Plaintiff's physician and certain aspects of her treatment are irrelevant to the Court's analysis of venue under § 1391(b). *See Harris*, 2005 WL 503935, at *3 ("[T]he [accident] giving rise to [the] plaintiffs' claims occurred entirely in Delaware. The fact that [the] plaintiffs received medical care in New York does not tip the balance in favor of a finding that venue is proper . . . ."). Moreover, although Plaintiff claims that "some of the events giving rise to this [A]ction did occur within the Southern District," (Pl.'s Mem. 7), Plaintiff provides no additional details on these purported events.

Therefore, because a "substantial part of the events or omissions giving rise to [Plaintiff's] claim" did not occur in the Southern District, venue here is improper under

§ 1391(b)(2).  Further, because venue does lie in the Northern District, the Court need not apply 28 U.S.C. § 1391(b)(3).  *See* 28 U.S.C. § 1391(b)(3) ("A civil action may be brought in . . . if there is no district in which an action may otherwise be brought . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.").

### 2.  Transfer

Having concluded that venue is improper in the Southern District, the Court has discretion to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "[T]he Court enjoys considerable discretion in deciding whether it is in the interest of justice to transfer a case." *Nelson*, 2019 WL 2514229, at *10 (citation and quotation marks omitted).  The Court's discretion may be informed by "the convenience of the parties, ease of access to sources of proof, and concerns of judicial economy," as well as "the ultimate goal of the expeditious and orderly adjudication of cases and controversies on their merits."  *Id.* (citations, alteration, and quotation marks omitted).  Further, whether a transfer is in the interest of justice depends upon "whether the plaintiff has been diligent in pursuing his [or her] claim, whether the opposing party would be unduly prejudiced by the transfer, and whether [the] plaintiff's reason for bringing the case in the wrong forum is analogous to an 'erroneous guess' about an 'elusive fact.'"  *Ne. Landscape*, 2015 WL 8492755, at *5 (alterations in original) (citation and some quotation marks omitted).

The Court finds that transfer to a proper venue is the appropriate course.  *See Open Sols. Imaging Sys., Inc. v. Horn,* No. 03-CV-2077, 2004 WL 1683158, at *7 (D. Conn. July 27, 2004) ("[I]n most cases of improper venue[,] the courts conclude that it is in the interest of justice to transfer . . . ." (citation omitted)).  First, the Court finds that Plaintiff has been diligent in

pursuing her claim, which has been pending in the Southern District for over eight months.

Plaintiff filed the instant Complaint in a timely fashion, albeit in the wrong forum. *See Gibbons*

*v. Fronton*, 661 F. Supp. 2d 429, 436 (S.D.N.Y. 2009) (concluding that "the equities weigh in . . .

favor" of transfer where the plaintiff "filed his claims in a timely fashion, but in the wrong

forum").  Second, given that Defendants reside in the Northern District of New York and have

requested that the Court transfer this case to that jurisdiction, (Defs.' Mem. 2), they would not be

prejudiced by a transfer.  *See Loos v. Mitcheltree*, No. 13-CV-69, 2013 WL 3759957, at *3

(W.D.N.Y. July 15, 2013) (finding that "transfer to th[e] district [in which the defendant resided]

would not be prejudicial" (citation omitted)).  Because Defendants remain able to defend

Plaintiff's claim on the merits, transfer will not automatically result in an adverse judgment

against Defendants.  *See id.* (finding that "transfer is not unduly prejudicial" where "transfer will

not automatically result in an adverse judgment against [the] [d]efendant").  Lastly, there are no

allegations that Plaintiff exhibited any bad faith in bringing this Action in the Southern District.

*See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 174 (S.D.N.Y. 2009) (finding "that it is in

the interest of justice to transfer, rather than to dismiss, this case" where the "[p]laintiff has acted

in good faith in all his pleadings").

Accordingly, the Court will transfer this case to the Northern District, a "district . . . in

which it could have been brought."  28 U.S.C. § 1406(a).[3]

---

[3] "Because the Court grants mandatory transfer under [§] 1406(a), it need not consider
the [P]arties' arguments for [and against] discretionary transfer under 28 U.S.C. [§] 1404."
*Holmes*, 2015 WL 10848308, at *4; *see also Wohlbach v. Ziady*, No. 17-CV-5790, 2018 WL
3611928, at *3 n.5 (S.D.N.Y. July 27, 2018) ("Since venue is not proper here, transfer pursuant
to § 1404(a) is not appropriate." (citation omitted)); *Kelly-Brown v. Winfrey*, No. 11-CV-7875,
2013 WL 6574918, at *1 (S.D.N.Y. Dec. 12, 2013) ("[A transfer pursuant to 28 U.S.C.
§ 1404(a)] presuppose[s] that the original court had jurisdiction over the action and it was
brought in the correct forum." (citation and quotation marks omitted)).  Thus, the Court does not
address the Parties' arguments regarding, for example, the convenience of witnesses, locations of

III.  Conclusion

For the reasons stated above, the Court concludes that venue in the Southern District of New York is improper, but that the case should be transferred to the Northern District of New York.  The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 15), and transfer the case to the Northern District of New York forthwith.

SO ORDERED.

DATED:      May 19, 2020
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

documents, and the relative means of the Parties, all of which are relevant factors under a § 1404(a) analysis.  *See, e.g.*, *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 401–02 (S.D.N.Y. Aug. 17, 2005).